May it please the court, I am Robert Jobe and I'm appearing today on behalf of the petitioner Harpal Singh Cheema. Because Mr. Singh was arrested for participating in a political demonstration and brutally beaten or tortured in 1984, the Board of Immigration Appeals agreed that he is a victim of past persecution and that as a consequence he's entitled to a presumption that his fears of future persecution in India are well founded. Now, to rebut that presumption, the government has to offer a preponderance of the evidence demonstrating that there's been a fundamental change in circumstance in India and that that fundamental change undermines the well-foundedness of Mr. Singh's fear. In this case, the Board essentially offered us three reasons to support its conclusion that DHS had in fact rebutted the regulatory presumption that Mr. Singh's fear of future persecution is well founded. The first and what I consider to be the most important is that the Board relied on a document that was prepared by the Home Office of the, in the United Kingdom, addressing asylum claims from India. And it relied on a single sentence in that report, and this is on page 256 of the report, which states that, quote, there are exceptions, but the Board didn't deal with the exceptions. The report says there are exceptions such as people with a local passport. The State Department country report shows a lot of changes since that time, including the fact that the Prime Minister of India is now a Sikh who openly appears at party rallies of the very organization that your client was a minor participant in over 20 years ago. Why don't those constitute substantially changed circumstances? Your Honor, you've asked a lot, that question contains a lot of different factors for me to deal with. But, I mean, as a threshold matter, it's not enough to show that there's been a fundamental change in circumstance. You have to demonstrate that that change undermines this particular applicant's well-founded fear. Well, let's take the first part of my question then about, happened a long time ago and he's  now a Sikh. Now, at some point, what's important is the Board of Immigration Appeals did not affirm the IJ's finding that Mr. Singh could relocate to some other part of India. And we think that's important because here, although Mr. Singh traveled back to India on three separate occasions, he never went back to Punjab. If you look at the record, this is all set forth on pages 120, 122, and 123. What he says is that although he returned to India on three separate occasions, he never visited his home village. He had his wife come to him in Uttar Pradesh, which was 600 miles from his home village. So insofar as you're able to draw any inference from his visits, it certainly doesn't suggest that it's safe for him to return to Punjab. And ultimately, that's the issue in this case because obviously he doesn't have to establish that he has a well-funded fear that's countrywide. I believe you're perhaps misstating our law that the, as I understand it, and correct me if you have a case to the contrary, the fact that these things originally occurred in Punjab, but he can relocate to another part of the country without problems, is that acceptable in terms of rebutting this, is it not? Not in this case, Your Honor. Why is that? Well, because you can obviously only affirm on grounds that the board itself set forth, and the board did not affirm on that ground. Well, they didn't address it, did they? No, the I.J. addressed it, and the board did not specifically affirm on that ground. I understand, but the reality is that they didn't say, we disagree with the I.J. And under our regulation, doesn't that mean that they have accepted what the I.J. said? No, not at all. What authority do you have for that? Well, the board in this case, Your Honor, it didn't issue a Bourbonno Affirmance. It didn't affirm the immigration judge's decision as written. It issued its own opinion. And in this case, the board specifically only affirmed one aspect of the judge's decision, and that is with respect to changed country conditions. Now, on this countrywide persecution thing, it's an important point, because we feel like we'd have a strong argument if the board were to address that point, which it hasn't. Because, see, it's a two-part test. You're misstating the test. It's not simply that the person that, it's not simply that if the person could go and live safely in some other part of the country, he loses. The government has the burden of demonstrating that in a particular case, it's reasonable to expect him to do so under all the circumstances. And here, the board never considered that question. And we think we'd have a very strong argument that because this man was forced to flee his home country for a 20-year period, developed a life outside India, and now all of his family has departed the country, we think under the circumstances, it would not be reasonable to expect him to do that. But the board did not address that question. Did he go to some other country before he He was in the United Arab Emirates in Abu Dhabi for 20 years as a result of the arrest that he suffered. And it's our belief, therefore, that that has to enter into that equation about the reasonableness of his ability to relocate. But the important point there is that, again, the board didn't address that question, and so it's not before the court. He was, as I understand it, a very minor participant in a very major rally. Is that correct? Like over 500 people involved? Correct. That's right. So how does he believe that they're still looking for him? Well, at that point, Your Honor, the board specifically credited his testimony that the police are looking for him. If we could just walk through that real quick. Pages 118 and 119 of the record, I guess, is where it begins. And again, the immigration judge didn't accept this testimony. But the most important fact of this case is that the board rejected that aspect of the immigration judge's decision and found him credible with respect to his testimony that the police are continuing to look for him. Let's see here. I guess it begins with his testimony that his, you know, immediately after he was released in 1984, the police began visiting his home. They visited, he says, in late November of 1984, and that's what precipitated his departure. He says that thereafter, until 1999, when his father left the country, his father continued to write him letters specifically telling him that the police were visiting him, that is the father, and that therefore it's not safe for him to go back. They specifically credited that testimony. Now, he went on to say that when he returned to India after he was deported from Abu Dhabi, he went to Uttar Pradesh. Again, that's a place 600 miles from his home village. And there he sent his friend, a man named Bakram. By the way, it's up to you, but do you want to reserve any time for rebuttal? Yeah, I'll just finish this point real quick. Okay, that's fine. He sent his friend to Punjab. His friend contacted the Sarpanch, and this is on page 119 of the administrative record. The Sarpanch is the head of the village, his local village. And the Sarpanch members, he also, or the Panchayat members, he also consulted. And he says, he told me that the village council members and the Sarpanch had told him that the police are still searching for me. Well, you've got to keep in mind here, the burden of proof on this question is on the government. He offered testimony that the board found credible that the police are still searching for me. Nevertheless, the board said, we think the government has met its burden of proof here. That's hard for me to understand. If the burden had been on him, I might understand that. They might be able to say, well, this is hearsay. We don't necessarily accept that as fact. But the burden here is on the government. He offered testimony that they found credible, and nevertheless, and the government offered nothing to impeach it, and nevertheless, the board rejected it. We think that's clearly error. Okay. Do you want to reserve the balance of your time before rebuttal? Yes, Your Honor. Okay. Let's hear next from the government, Mr. Robbins. Good morning, Your Honors. May it please the Court, Jonathan Robbins here on behalf of the Respondent Eric Holder. Mr. Singh is an ordinary Sikh, and he has never claimed otherwise. And as Your Honors noted, things have dramatically improved for ordinary Sikhs in India since the 80s and early 90s, such that, as Your Honors noted, there's a Sikh prime minister, the Sikh political party, Akali Dalman, in India has gained political power through successful elections. Sikhs are attending open rallies. And certainly, the immigration judge reasonably determined that circumstances had changed in India, given the fact Is that alone, is changed circumstances alone sufficient to meet the government's burden to show that there is no reasonable fear of future persecution? Oh, no. The way that this, at first, there's a, it would, you would determine whether or not the petitioner has established past persecution. Then he would, if he does that, which he did in this case, he would be entitled to a presumption. Then the government would rebut that presumption with changed circumstances. And then after that, if the government successfully rebuts, then the petitioner would have to show a well-founded fear of future persecution. Right. And that's, I thought that's what I said. But in any event, Oh, I'm sorry. the, they, of course, take the position that the government has not met its burden based upon the changed circumstances. Do you have any response to that? Well, I do. Certainly, the government did meet its burden. Again, there's all this evidence of changed circumstances in India, combined with Mr. Singh's own concessions that he is not an active militant for the pro-Khalistan party. He's conceded that he's not, you know, a leader or a militant or a prominent member. And certainly his own claims in that regard are evidence. He testified to those things. The government is allowed to meet its burden using concessions like that by the petitioner. So, and with respect to my colleague's brief arguments in his brief regarding the individualized analysis, you know, the board relied on the State Department reports. It's always going to be a little bit of a problem when you're nature, nature general. But again, the, the immigration judge and board both, both analyzed those reports with respect to what petitioner had testified to. And again, the indication is that the only people, the only Sikhs in India which face problems there are active leaders, militants, you know, people that are engaged in violence. You know, and petitioner has conceded that he does not fall into any of those categories. With respect to this, these claims regarding the local police still looking for him. If you look in the record, the claims, the evidence through which he claims this particular assertion that the local police are still after him. They're all, he provides a lot of letters and a lot of affidavits and they all essentially say the same thing. There are one or two lines saying the local police are still looking for him. He could be killed in a fake encounter. Things of that nature. But the immigration judge in looking at the evidence and determining whether or not this evidence was credible, the immigration judge determined it was not credible and the board said, well, hold it there. We, we think that this information is credible. But it's important not to confuse credibility with reliability here. Just because the evidence is credible doesn't mean that evidence is probative. And the immigration judge, when looking at all the evidence, considering how things have changed for ordinary Sikhs in India and, and, and combined with the lack of specificity of all these allegations with the local police, no specific dates, no specific encounters, the immigration judge reasonably determined given, looking at the totality of the evidence, that he hadn't established a well-founded fear of future persecution. And certainly the record doesn't compel a contrary conclusion to that. Again, you could look at the evidence and look at some of these affidavits and say, well, maybe he did, maybe he didn't. But if you can go both ways on the evidence like that, the record doesn't compel one conclusion over the other. And under this court's standard of review, deference to the board and immigration judge is appropriate. Again, Mr. Singh has traveled back and forth to India numerous times since 1984. Back in 1984, he was part of a mass arrest with 500 other people. There's no other evidence in the record to indicate that he would in any way be singled out. There's no reason to believe that the police would have a personal vendetta against him or anything along those lines. If you're going to make a claim that something that's now over 25 years ago, that you were part of a mass arrest, you have to show some type of evidence that shows that you face a specific danger, that you're going to be singled out. There's nothing in the record to indicate that. And as a result, the board properly upheld the immigration judge's decision and this court should do the same and affirm the board's decision and deny the petition for review. And unless there are any other particular questions, I guess that's probably it. Okay. Thank the government for its presentation. We'll hear a rebuttal now from Mr. Joe. Thank you very much for your time, Your Honors. You've got 55 seconds, Mr. Joe. Okay, Your Honor. For starters, obviously the government's placing the burden on Mr. Singh. He makes his argument that if he's going to make – if he's going to contend that he was arrested 25 years ago and he still has a well-founded fear, he has to come forward with evidence showing that he's still at risk. That's obviously wrong. The government has the burden of coming forward and proving that he has no well-founded fear. Now, what evidence was offered here is this background evidence that neither the panel nor the government has decided to confront. It says specifically there are exceptions to the general rule that only high-profile people are at risk, including people with a local history of abuse. That's Mr. Singh. The government ignores that. Mr. Singh testified that he learned after sending a delegate to Punjab that he's at to impeach that testimony. And if you look at page 132 of the record, most of that testimony is entirely indecipherable. The question is, who bears the burden? Who suffers from that lack of detail in the transcript because it's not been transcribed? That's the government just because it's their burden of proof in this case. Very good. Thank you for your argument, both of you, whether the case of Mr. Singh-Chima v. Holder is submitted.
judges: Todd, Hug, Smith M.